UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-263 |
| | § | |
| OSCAR SALINAS JR. | § | |

## ORDER & OPINION

The Court now considers the "Motion for Default Judgment"[1] (hereafter, "motion") filed by the United States of America ("Plaintiff") against Oscar Salinas Jr. ("Defendant"). After duly considering the motion, record, and relevant authorities, the Court **GRANTS** Plaintiff's motion.

### I. BACKGROUND

Plaintiff brings this action against Defendant to collect a debt arising from Defendant's defaulted loans, borrowed on August 3, 1994 and July 26, 1995 from Texas Commerce Bank in Houston, Texas.[2] The loans were guaranteed by the Texas Guaranteed Student Loan Corporation, and then reinsured by the United States Department of Education (hereafter, "Department of Education") pursuant to the Higher Education Act.[3] According to an attached March 25, 2015 "Certificate of Indebtedness," certified by a Department of Education Loan Analyst, Defendant executed a promissory note on August 3, 1994, to secure a loan of $2,625.00, which was disbursed between September 20, 1994 and December 27, 1994.[4] Thereafter, on July

---

[1] Dkt. No. 6.
[2] Dkt. Nos. 1; 1-1 at 1.
[3] Dkt. No. 1-1 at 1 (citing Title IV-B of the Higher Education Act of 1965, as amended 20 U.S.C. 1071 *et seq.* (34 C.F.R. § 682)). 34 C.F.R. Section 682 describes the Federal Family Education Loan programs, including the Federal Stafford Loan Program; the Federal Supplemental Loans for Students Program; the Federal PLUS Program; and the Federal Consolidation Loan Program. These programs are now collectively referred to as the "Federal Guaranteed Student Loan (GSL) programs." *Id.* at § 682.100(b)(2)(ii).
[4] Dkt. No. 1-1 at 1.

26, 1995, Defendant executed a second promissory note to secure a loan of $2,625.00, which was disbursed between August 9, 1995 and December 26, 1995.[5]

After Defendant defaulted on the loans on September 20, 1997, Texas Commerce Bank "filed a claim on the loan guarantee" and the Texas Guaranteed Student Loan Corporation paid a claim in the amount of $5,806.10 to Texas Commerce Bank.[6] Thereafter, the Department of Education reimbursed the Texas Guaranteed Student Loan Corporation pursuant to its reinsurance agreement.[7] After the Texas Guaranteed Student Loan Corporation was unable to collect the debt from Defendant, the loans were assigned to the Department of Education on September 15, 2003.[8]

Plaintiff has no record of any payments made towards the debt, which totaled $10,984.39, including interest, as of January 15, 2015, since it was assigned to the Department of Education.[9] The Certificate of Indebtedness explains the "[i]nterest accrues on the principal. . .at the current rate of 3.13% and a daily rate of $0.50 through June 30, 2015, and thereafter at such rate as the Department establishes pursuant to section 427A of the Higher Education Act of 1965, as amended, 20 U.S.C. 1077a."[10]

---

[5] *Id.*
[6] *Id.* The Certificate of Indebtedness provides that the claim amount was paid to the holder of the loan. The Court presumes the holder of the loan was still Texas Commerce Bank at the time of Defendant's default, as there is no evidence on the record to suggest that the loans were transferred prior to being assigned to the Department of Education in 2003.
[7] *Id.*
[8] *Id.* The 2015 Certificate of Indebtedness provides that the loans were transferred to the Department of Education pursuant to 34 C.F.R. § 682.410(b)(4), which as of 2020 addresses the capitalization of unpaid interest, rather than the transfer of loans from the guarantor. The most current version of 34 C.F.R. § 682 addresses the federal reinsurance agreement in Section 682.404, which provides a set of procedures for the assignment of loans from a guarantor agency to the Department of Education pursuant to the federal government's reinsurance agreement.
[9] Dkt. No. 1-1. Specifically, as of January 15, 2015, the principal amount was $5,806.10. and the interest accrued was $5,178.29.
[10] *Id.*

Plaintiff filed its complaint on July 31, 2019, alleging Defendant failed to pay the principal and interest owed on the loans.[11] Defendant was served with process on September 19, 2019.[12] To date, Defendant has not appeared or answered. On November 14, 2019, Plaintiff filed its motion for entry of default.[13] The Court granted Plaintiff's request on November 15, 2019[14] and the Clerk of the Court entered default against Defendant on November 18, 2019.[15] Plaintiff filed the instant motion for default judgment on November 18, 2019.[16] The Court now turns to its analysis.

**II.    LEGAL STANDARD**

Obtaining an entry of default judgment is a three-step process: (1) default by the defendant; (2) entry of default by the Clerk of Court; and (3) entry of a default judgment.[17] Here, Defendant has defaulted by failing to answer or otherwise appear in this case. Thus, entry of default has been made against him by the Clerk of Court.[18] The only remaining question is whether the third step—actual entry of default judgment—is appropriate.

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations.[19] Nevertheless, default judgment determinations are left to the sound discretion of the district court.[20] Determining the propriety of default judgment is itself a three-step process. *First*, the Court must determine if default judgment is procedurally proper, countenancing six factors:

---

[11] Dkt. No. 1.
[12] Dkt. No. 2.
[13] Dkt. No. 3.
[14] Dkt. No. 4.
[15] Dkt. No. 5.
[16] Dkt. No. 6.
[17] *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996)).
[18] Dkt. No. 5.
[19] *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).
[20] *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

> (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion.[21]

*Second*, if default judgment is procedurally proper, the Court must determine whether the plaintiff's claims are substantively meritorious.[22] After all, a defendant's failure to answer or otherwise defend does not mean the particular legal claims levied against him are valid.[23] When analyzing the merits of a claim, courts may assume the truth of all well-pled allegations in the plaintiff's complaint.[24] *Third*, if the plaintiff's claims are meritorious, the Court must determine whether the requested relief is appropriate.[25] In particular, Rule 54(c) dictates a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."[26]

If the Court determines default judgment is appropriate, it must determine how to calculate damages. The general rule is "unliquidated damages normally are not awarded without an evidentiary hearing."[27] However, there is an exception when the amount claimed is "one capable of mathematical calculation."[28] When this exception applies, there is no need for an evidentiary hearing, and the court can enter default judgment on the briefing.

### III. LEGAL ANALYSIS

#### a. Default judgment is procedurally proper.

The record does not reveal any material fact issues, and the grounds for default are clearly established — Defendant has not answered or appeared. There is no indication in the record that these failures were somehow made in good faith or otherwise excusable, and for that

---

[21] *Bieler*, 2013 WL 3283722, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).
[22] *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[23] *See id.*
[24] *Id.*
[25] *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).
[26] FED. R. CIV. P. 54(c).
[27] *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 414 (5th Cir. 1998).
[28] *Id.* (citing *James v. Frame*, 6 F.3d 307, 309–10 (5th Cir. 1993)).

reason, there is not currently any basis for the Court to believe it would be obligated, upon motion, to vacate default judgment against Defendant. Moreover, and again due to Defendant's failure to answer or otherwise appear, default judgment cannot be properly characterized as unduly harsh or prejudicial. For all these reasons, default judgment against Defendant is procedurally proper at this time.

### b. Plaintiff's claim is substantively meritorious.

Plaintiff alleges Defendant's failure to pay the principal and interest on the loans secured by two promissory notes resulted in Plaintiff incurring damages.[29] To recover on a promissory note, the United States must establish that (1) the defendant signed the note; (2) the government is the current owner or holder of the note; and (3) the note is in default.[30]

Assuming the truth of all well-pled allegations in Plaintiff's complaint, the Court finds Plaintiff's claim to recover on the promissory notes to be substantively meritorious. While Plaintiff does not attach the promissory notes, Plaintiff attaches the (1) Certificate of Indebtedness;[31] (2) an affidavit of Plaintiff's attorney regarding the amount due on the promissory notes;[32] and (3) an affidavit of Plaintiff's attorney regarding attorneys' fees.[33] The Certificate of Indebtedness, which is certified by a Department of Education Loan Analyst, establishes that Defendant executed the promissory notes, the notes were assigned to the government on September 15, 2003, and the government has received no payment on the notes since the notes were assigned to the government in 2003. In the affidavit regarding the amount

---

[29] *See* Dkt. No. 1 at 1–2 (Plaintiff's Complaint).
[30] *United States v. Keathley*, No. CIV.A. C-11-107, 2011 WL 2600552, at *3 (S.D. Tex. June 29, 2011) (citing *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir.2001)).
[31] Dkt. No. 1-1.
[32] Dkt. No. 6 at 3–5.
[33] *Id.* at 8-10. Plaintiff also attaches a "Nonmilitary Affidavit" wherein Plaintiff's attorney swears to his investigation of the fact that Defendant has not served in the military. *Id.* at 6–8. This document is not currently relevant to the Court's analysis.

due on the promissory notes, Plaintiff's attorney swears to the amount due by Defendant – $10,984.39 – including principal and interest, as of January 15, 2015.[34]

While the promissory notes themselves would be more probative than the Certificate of Indebtedness, the Court finds sufficient evidence on the record to indicate that Plaintiff's claim to recover the amount owed on the promissory notes is substantively meritorious. Plaintiff attaches evidence establishing that (1) Defendant signed the notes and took out both loans; (2) the government is the current owner or holder of the notes; and (3) the notes are in default.[35] Moreover, courts have repeatedly held that a Certificate of Indebtedness including the aforementioned information is sufficient to enable the United States to state a meritorious claim to recover the amount owed on a promissory note in its possession.[36] Accordingly, the Court finds based on the allegations pled in Plaintiff's complaint that Plaintiff's claim to recover the amount owed on the promissory notes is substantively meritorious.

  c. *Plaintiff's requested relief is appropriate.*

In the complaint, Plaintiff requests the Court enter a default judgment for the principal owed of $5,806.10 plus $5,178.29 in interest accrued as of January 15, 2015; attorney's fees;

---

[34] Dkt. No. 6 at 3–4.
[35] *Keathley*, No. CIV.A. C-11-107, 2011 WL 2600552, at *3 (citing *Lawrence*, 276 F.3d at 197).
[36] *See id.* (holding that summary judgment in favor of the United States was proper where the United States sought to recover the amount owed on a promissory note and only attached the Certificate of Indebtedness from the Department of Education, but no promissory note); *see also United States v. Wong,* No. CV B-15-103, 2015 WL 12839115, at *1 (S.D. Tex. Oct. 26, 2015), report and recommendation adopted, No. CV B-15-103, 2015 WL 12844208 (S.D. Tex. Dec. 1, 2015) (granting default judgment where "[t]he Government [] submitted a certificate of indebtedness establishing that (1) [defendant] signed the subject promissory note; (2) the Government owns the promissory note; and (3) the note has not been paid," but did not submit a promissory note); *United States v. Mendoza*, No. CV B-14-122, 2015 WL 12843207, at *1 (S.D. Tex. Apr. 24, 2015), report and recommendation adopted, No. CV B-14-122, 2015 WL 12844207 (S.D. Tex. May 22, 2015) (granting default judgment where "[t]he Government [] submitted a certificate of indebtedness establishing that (1) [defendant] signed the subject promissory note; (2) the Government owns the promissory note; and (3) the note has not been paid," but did not submit a promissory note); *United States v. Rodriguez*, No. CV B-11-068, 2011 WL 13339228, at *1 (S.D. Tex. Aug. 25, 2011), report and recommendation adopted, No. CV B-11-068, 2011 WL 13339230 (S.D. Tex. Sept. 23, 2011) (granting default judgment where the United States attached a certificate of indebtedness establishing that defendant executed the promissory note, that the United States owns the promissory note involved, and that the note has not been paid, but did not attach the promissory note itself).

administrative fees and costs; pre-judgment interest at a rate of 3.31% per annum, with a daily accrual of $.50 from January 15, 2015 until judgement; and post-judgment interest at a statutory rate or as allowed under the law.[37] Plaintiff requests the same damages in the present motion as requested in its original complaint.[38] Plaintiff is not requesting anything of a different nature, or to a greater degree, than what was originally requested in its complaint. Thus, Plaintiff's requested relief is appropriate here.

Thus, in light of Plaintiff's fulfilment of all three factors, the Court finds default judgment appropriate. The Court now turns to the calculation of damages.

   d. *Calculation of Damages*

Because the amount claimed is "one capable of mathematical calculation," an evidentiary hearing to determine damages is not necessary in this case.[39] Plaintiff's actual damages figure of $10,984.39 is directly supported by the Certificate of Indebtedness[40] and an affidavit submitted by Plaintiff's attorney.[41] Because this figure is adequately supported by the certificate and affidavit, and evidently capable of mathematical calculation, it may be granted on the briefing. As such, the Court grants Plaintiff's request for $5,806.10 of principal and $5,178.29 of interest accrued as of January 15, 2015, for a total amount of **$10,984.39.**

Plaintiff's attorneys' fees and administrative costs may also be granted on the instant briefings. Where a plaintiff has successfully stated a claim for an amount owed on an unpaid promissory note, a plaintiff is also entitled to reasonable attorneys' fees and costs.[42] Plaintiff's counsel represents that he charged $785.00 for his "reviewing the file, consulting with

---

[37] Dkt. No. 1 at 1–2.
[38] *See* Dkt. No. 6; *see also* Dkt. No. 1.
[39] *See Leedo Cabinetry*, 157 F.3d at 414.
[40] *See* Dkt. No. 1-1 at 1.
[41] Dkt. No. 6 at 3–5.
[42] *See Keathley*, No. CIV.A. C-11-107, 2011 WL 2600552, at *4 (citing *U.S. v. Benson*, 2005 WL 1924357 (S.D.Tex. Aug. 11, 2005); *U.S. v. Durbin*, 64 F.Supp.2d 635, 636 (S.D.Tex.1999)).

representatives of the client when necessary, drafting the complaint, and drafting the default judgment motion and supporting affidavits."[43] Plaintiff's counsel does not provide how many hours he expended completing the aforementioned work but represents that he has twenty years of experience in this field. Given that $332.40 is a reasonable hourly rate for Plaintiff's counsel's level of experience,[44] and the substantial likelihood that Plaintiff's counsel expended at least two to three hours of work on this case to warrant his requested $785.00, the Court finds Plaintiff's counsel's requested attorneys' fees of **$785.00** to be reasonable. Plaintiff also seeks to recover the $400.00 filing fee as an administrative cost. The Court also finds Plaintiff's recovery of the **$400.00** filing fee to be reasonable.

Plaintiff further requests pre-judgment interest at a rate of 3.13% per annum and a daily rate of $0.50 since January 15, 2015. Plaintiff's pre-judgment interest rates are based off of the Certificate of Indebtedness, which provides that "[i]nterest accrues on the principal shown here at the current rate of 3.13% and a daily rate of $0.50 through June 30, 2015, and thereafter at such a rate as the Department [of Education] establishes pursuant to section 427A of the Higher Education Act of 1865, as amended, 20. U.S.C. 1077a."[45] Plaintiff does not provide how the interest rate has changed since June 30, 2015, but requests the Court award pre-judgment interest at the rate in place prior to June 30, 2015. The Court finds this request to be reasonable. As such,

---

[43] Dkt. No. 6 at 8.
[44] *See* State Bar of Texas 2015 Hourly Rate Fact Sheet, 12 (2016) https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/Cont entDisplay.cfm&ContentID=34182 (providing $300.00 as the median hourly fee for a lawyer with 16-20 years of experience in 2015 and basing years of experience on year first licensed in any jurisdiction). Plaintiff's counsel, M. H. Cersonsky, represents he has at least twenty years of experience. The State Bar of Texas' 2015 report is its most recent. Between 2013 and 2019, this average rate increased by 2.7% per year. If the Court assumes the average rate of $300.00 has increased by 2.7% per year between 2015 and 2019, this is a total increase of 10.8%, or $32.40. Thus, the Court estimates that an average hourly rate for the year of 2019, the last year during which counsel worked on this case, was $332.40.
[45] Dkt. No. 1-1 at 1.

the Court grants Plaintiff's request for pre-judgment interest at 3.13% per annum and a daily rate of $0.50 since January 15, 2015, totaling **$1,866.15**.[46]

Plaintiff also requests post-judgment interest at the applicable statutory rate. Currently, the post-judgment interest rate is 0.15% in the Southern District of Texas.[47] The Court finds this request to be reasonable. Thus, the Court also grants Plaintiff's request for post-judgment interest at the applicable statutory rate, **0.15%**.

IV.  HOLDING

For the reasons stated above, Plaintiff's motion for default judgment against Defendant is **GRANTED**. Defendant is liable for **$10,984.39** in actual damages for failure to pay the amounts owed on the promissory notes; **$785.00** in attorneys' fees; **$400.00** in administrative costs; **$1,866.15** in accrued pre-judgment interest; and post-judgment interest at **0.15%**. Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 13th day of April, 2020.

_____
Micaela Alvarez
United States District Judge

---

[46] Based on the $5,806.10 principal, the annual accrued interest of 3.13% totals $908.65. This is based on a five-year accrual of $181.73 per year between January 15, 2015 and January 15, 2020. The daily accrued interest of $0.50 per day totals $957.50, based on the 1,915 days between January 15, 2015 and April 13, 2020. Thus, the total amount of pre-judgment interest owed by Defendant is $1,866.15.
[47] *See* http://www.txs.uscourts.gov/page/post-judgment-interest-rates. As of April 13, 2020, the post-judgment interest rate in the Southern District of Texas is 0.15%.